Honorable Jeremiah C. Lynch
Federal Magistrate Judge
Missoula Division
Russell E. Smith Courthouse
201 East Broadway, Room 370
Missoula, MT  59802

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

| | |
|---|---|
| RICK and PAT ARNESON, | CAUSE NO. CV 05-189-M-JCL |
| Plaintiffs, | |
| vs. | |
| MICHIGAN TISSUE BANK, SPARROW HOSPITAL, and JOHN DOES I-IV, | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| Defendants. | |

_____

This matter comes before the Court on Defendants' Renewed Motion for Partial Judgment on the Pleadings.  Upon consideration of the briefs and materials of record, the Court hereby enters the following:

**RECOMMENDATION**

It is recommended that Defendants' Motion for Judgment on the Pleadings (dk.# 28) be **DENIED.**

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that

pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this   18th   day of July, 2006.

                                       /s/ Jeremiah C. Lynch
                                       Jeremiah C. Lynch
                                       United States Magistrate Judge

**RATIONALE**

**I. Background**

Plaintiffs Rick and Pat Arneson are citizens of the State of Montana. Pls.' Second Amend. Cmpl. at ¶ 1 (May 24, 2006) According to the Complaint, Defendants Michigan Tissue Bank ("MTB") and Sparrow Hospital ("Sparrow") are not-for-profit corporations organized in the State of Michigan who supply, manufacture, and distribute human tissue-based product for use in the healthcare industry. *Id.*, at ¶¶ 9-10.

On or about December 12, 1995, Rick Arneson received a dental implant from Dr. Mark Nedrud, M.D., a physician "who resides and practices oral surgery in Missoula, Montana." *Id.*, at ¶¶ 4,13. The tissue used in the dental implant was obtained by Dr. Nedrud from the "Michigan Tissue Bank and harvested and/or supplied originally by Sparrow Hospital[.]" *Id.*, at 13.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 2

Plaintiffs claim that Rick Arneson subsequently developed "severe complications, infections and sores at the implant sight [sic]...[and]...was eventually diagnosed with severe chronic osteomyelitis and osteomeorosis of the bones in his jaw and head." *Id.,* at ¶ 14.

On or about November 11, 2002, Rick Arneson obtained a report issued by the Centers for Disease Control which he claims showed "the donor of the tissue [used in his implant] tested positive for Alpha steptococcous; streptococcus group D not enterococcus; coag-neg staphylocococus; and bacillus species." *Id.,* at ¶ 15. Subsequently, Plaintiffs filed suit against Defendants believing they were liable for injuries resulting from the implant. *Id.,* at ¶¶ 15-17. Among the counts in Plaintiffs' Second Amended Complaint are claims based on the theories of strict liability, breach of implied warranty, and negligence, as well as a claim for punitive damages. *Id.,* at ¶¶ 18-23, 25.

Defendants now move, under F. R. Civ. P. 12(c), for a judgment on the pleadings with respect to the above-mentioned claims. Defs.' Br. in Support of Renewed Mot. at 1 (June 22, 2006). Defendants argue Montana's blood and tissue shield laws[1], in particular Mont. Code Ann. § 50-33-102 (2006), "specifically

---

[1] Although Defendants alternatively reference Michigan and Montana statutes in their briefing, Defs.' Br. at 8 & 13, for the reasons given below, this Court will only apply the substantive law of Montana in this case.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 3

bar strict liability and breach of warranty claims against Defendants or tissue banks by declaring the procurement and provision of blood, tissue, and bone materials to be a service rather than a sale." *Id.,* at 3. Consequently, Defendants argue "[p]laintiffs' strict liability and breach of warranty claims must be dismissed as a matter of law", and the punitive damages claims must also be dismissed since they are predicated upon the viability of the underlying strict products liability claim. *Id.,* at 12. Finally, with respect to Plaintiffs' negligence claims under Count Two of their Second Amended Complaint, Defendants request this Court to restrict those claims, under Mont. Code Ann. § 50-33-104 (2006), "to issues related to the standards set forth in the Montana or Michigan statutes and that any reference to strict liability or failure to warn in the context of negligence be barred in order to comply with the immunity provisions of the applicable blood shield laws." *Id.,* at 13.

     Plaintiffs urge this Court to reject Defendants' Motion. First, Plaintiffs argue Mont. Code Ann. § 50-33-102 (2006) does not immunize MTB from strict products liability and breach of warranty claims because the statute does "not apply to tissue banks but only to 'hospitals, long-term care facilities, or doctors'". Pls.' Br. at 4 (June 13, 2006). Second, Plaintiffs argue that Sparrow is not protected by the statute because it "did not 'inject, transfuse, transplant, or transfer' tissue into

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 4

the human body, a predicate for application of the statute." *Id.* Lastly, Plaintiffs oppose the Defendants' attempt to limit the negligence claims under Mont. Code Ann. § 50-33-104 (2006) by arguing that: 1) "MTB did not comply with the predicate conditions for immunity" as described in the statute, and 2) Sparrow is not covered by the statute because it is "clearly not a blood or tissue bank." *Id.* at 7.

**II. Applicable Law**

Under F. R. Civ. P. 12(c), "[a] judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005) (citations and quotations omitted).  Furthermore, in a motion under Rule 12(c), the Court must view "[a]ll material allegations in [the] complaint...in the light most favorable to the plaintiff." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003)(citing *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1133 n. 1 (9th Cir. 2001).

A court sitting in diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (2006) "must apply the law of the forum state to determine the choice of law." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 n.4 (9th Cir. 2002) (citation and quotation omitted).  Plaintiffs argue Montana law applies under the choice

of law standards for strict products liability claims described in *Phillips v. General Motors Corp.*, 2000 MT 55, 298 Mont. 438, 995 P.2d 1002. Pls.' Br. at 7.  Since Defendants present no argument to the contrary under the "most significant relationship test" of Restatement (Second) of Conflict of Laws, this Court will apply Montana substantive law. *See Phillips*, ¶¶ 13, 23 (citation and quotations omitted).

**III. Discussion**

    **A. Application of Mont. Code Ann. § 50-33-102 (2006)**

The first question to be resolved is whether, taking the allegations in the Complaint in a light most favorable to Plaintiffs, Mont. Code Ann. § 50-33-102 (2006) is properly construed to immunize the Defendants from the strict products liability and breach of warranty claims.  Concerning the interpretation of statutes, the Montana Supreme Court has stated that,

> [t]he rules of statutory construction require the language of a statute to be construed according to its plain meaning...If the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe.

*In re Lewis*, 2004 MT 160, ¶ 15, 322 Mont. 13, ¶ 15, 92 P.3d 1218, ¶ 15 (citations and quotations omitted).[2]

---

[2] A federal court interpreting a state statute applies the state rules of statutory construction.  *See In re First T.D. & Investment, Inc.*, 253 F.3d 520, 527 (9th Cir. 2001).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 6

As Defendants note, an essential element for breach of warranty and strict products liability claims under Montana law "is the sale of a good or a product." Defs.' Br. at 5. *See* Mont. Code Ann. § 27-1-719 (2006); Mont. Code Ann. § 30-2-714 (2006). Mont. Code Ann. § 50-33-102 (2006) provides immunity from strict liability and breach of warranty claims to certain providers of "blood, blood products, human tissue, organs, and bones" by declaring:

> **50-33-102. Furnishing of blood, blood products, and human tissue, organs, or bones declared service and not sale**
>
> The furnishing of and the injecting, transfusing, transplanting, or transferring into the human body of whole blood, plasma, blood products, blood derivatives, human tissue, organs, or bones by a hospital, long-term care facility, or doctor of any such substances obtained from any source which said hospital, long-term care facility, or doctor is not directly or indirectly financially interested in or has any control over is hereby declared not to be a sale of such whole blood, plasma, blood products, blood derivatives, human tissue, organs, or bones for any purpose.[3]

The Defendants argue that "Montana's version of the Blood and Tissue Shield Act since 1987 declares that the procurement of blood, tissue, and bones is a service and not a sale *in all cases*." Defs.' Br. at 7 (emphasis added). The broad reading

---

[3]Section 50-33-102 was first enacted in 1971. Like its counterparts in other states, the statute was designed to shield certain entities and persons from strict liability and breach of warranty claims in relation to the furnishing of and transferring of blood and blood products. *See e.g. Weishorn v. Miles-Cutter*, 721 A.2d 811, 814 (Pa. Super. 1998), aff'd 746 A.2d 1117 (Pa. 2000). As would be expected, the statutory language of these blood shield statutes varies from state to state. *Id*.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 7

advocated by the Defendants, however, cannot be squared with the plain language of the statute.  The plain language of the statute establishes that the immunity provisions only apply when the following conditions are met: 1) the entity or person furnishing the blood or tissue <u>and</u> "injecting, transfusing, transplanting, or transferring" the blood or tissue products is a "hospital, long-term care facility, or doctor", and 2) the entity or person obtaining "such substances...is not directly or indirectly interested in or has any control over" the source from which those substances are obtained.

   The fact that Mont. Code Ann. § 50-33-102 confers immunity on specific entities and persons under specifically defined conditions is underscored by comparing the statute to Mont. Code Ann. § 50-33-104 (2006).  By way of the latter statute, blood banks and tissue banks, who are not referred to in Mont. Code Ann. § 50-33-102 (2006), receive immunity from suit if they comply with certain conditions relating to the testing of blood and tissue products prior to supplying them to a "hospital or physician[.]" Mont. Code Ann. § 50-33-104 (2006).  Reading these statutes as part of a "whole statutory scheme", *Orr v. State*, 2004 MT 354, ¶ 25, 324 Mont. 391, ¶ 25, 106 P.3d 100, ¶ 25 (citation omitted), leads to the conclusion that Mont. Code Ann. § 50-33-102 (2006) confers immunity when the entity or person furnishing the blood or tissue products is specifically a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 8

"hospital, long-term care facility, or doctor" and does not have any control of or financial interest in the source from which the products are obtained. If these conditions are not met, according to the plain language of the statute, the immunity provisions of Mont. Code Ann. § 50-33-102 do not apply.

Section 50-33-102 does not generally convert the furnishing of blood and tissue products into a service in all cases. This statute, in fact, is in contradistinction to similar statutes from other jurisdictions where the application of the "service, not sale" provision is not expressly conditioned upon the status or interests of the entities or persons furnishing the blood or tissue products. This was the case in *Condos v. Musculoskeletal Transplant Foundation*, 208 F.Supp.2d 1226 (D. Utah 2002).[4] In that case, the statute at issue, Utah Code Ann. § 26-31-1 (2006), stated that "[t]he procurement, processing, distribution, or use of whole human blood, plasma, blood products, and blood derivatives ...shall be construed to be the rendition of a service *by every person participating therein* and shall not be construed to be a sale." (emphasis added) The plain language of the Utah statute apparently converts the furnishing of these objects into a service irrespective of the status or interests of

---

[4]*Condos* is also distinguishable because the issue in that case was what type of material was covered by the Utah statute, not who was actually covered by the blood shield statute. *Condos*, 208 F.Supp.2d at 1228-1229.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 9

the person or entity furnishing them.  Such is not the case in Montana under Mont. Code Ann. § 50-33-102 (2006).

Statutes from the other jurisdictions discussed by Defendants, Defs.' Br. at 8-10, might lead to different outcomes in those jurisdictions, but those statues are of no consequence in this case.  While the decisional law interpreting similar statutes from other jurisdictions may provide persuasive commentary on the general purpose and functions of these types of statutes, their persuasive value must yield to the plain language of the Montana statutes at issue.[5]

Viewing the allegations in the Complaint in a light most favorable to Plaintiffs does not establish, as a matter of law, that either Defendant is a "hospital, long-term care facility, or doctor" within the contemplation of section 50-33-102.[6]  The Court can only ascertain from the Complaint that each of the

---

[5]Similarly, Defendants' reliance on legislative history and intent in this case is somewhat misplaced in light of the clear and unambiguous language of the statute. *See Lewis*, ¶ 15 ("The intention of the legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined, the courts **may not go further and apply any other means of interpretation.**") (emphasis in original) (citations and quotations omitted)

[6]This Court expresses no opinion as to whether MTB and Sparrow would actually qualify as "hospitals" under Mont. Code Ann. § 50-5-501(28) (2006), or "long-term care facilities" under Mont. Code Ann. § 50-5-501(35) (2006), but only that Defendants have failed to meet their burden respecting this question under F. R. Civ. P. 12(c).

Defendants are Michigan corporations who supply, manufacture, and distribute "human tissue based product". Pls.' Second Amend. Cmpl. at ¶¶ 2-3, 9-10. This Court is not in a position to conclude anything further about Defendants' status under this Rule 12(c) motion. Since this Court cannot make this determination at this juncture of the proceedings, it cannot conclude, as a matter of law, that Defendants are covered by the immunity provisions of Mont. Code Ann. § 50-33-102 (2006). Defendants' Motion for a Judgment on the Pleadings with respect to the strict liability, breach of warranty, and punitive damages claims, should therefore be denied.

### B. Application of Mont. Code Ann. § 50-33-104 (2006)

Defendants also request this Court, under Mont. Code Ann. § 50-33-104 (2006), to limit "Plaintiffs' claim for negligence...to issues related to the standards set forth in the Montana or Michigan statutes and that any reference to strict liability or failure to warn in the context of negligence be barred in order to comply with the immunity provisions of the applicable blood shield laws." Defs.' Br. at 13. That statute reads as follows:

> **50-33-104. Immunity of blood banks and tissue banks**
>
> No blood bank or tissue bank may be held liable in the absence of fault or negligence for injuries resulting from the injecting, transfusing, transplanting, or transferring of whole blood, plasma, blood products, blood derivatives, human tissue, organs, or bones supplied by any such blood bank or tissue bank to any hospital or physician if such

>blood products or tissue products have been tested by the
>latest testing procedures in accordance with recommendations
>of the American association of blood banks or the American
>association of tissue banks and by such test are not found
>to be dangerous to the health of the recipient of such blood
>products or tissue products.

Plaintiffs claim the "tissue provided by the Michigan Tissue Bank was obtained, processed, and sold in a manner that was not consistent with standards applicable to such processes, including the standards and testing procedures of the AATB and AABB in effect at the time the tissue was obtained." Pls.' Second Amend. Cmpl. at ¶ 16.  Plaintiffs in fact allege MTB has not complied with the precondition for immunity from suit described in Mont. Code Ann. § 50-33-104 (2006).  While Defendants dispute this point in their briefing, Defs.' Br. at 13, this is not an issue which can be resolved by this Court under a Rule 12(c) motion.

At a later point in these proceedings the issue of whether Defendants complied with the testing standards described in this statute may well be determined by the Court on summary judgment or by the trier of fact upon trial.  However, at this time the allegations in the Complaint, read in a light most favorable to Plaintiffs, do not provide this Court with a ground to make the determination that Defendants are immune from suit under this statute as a matter of law.  Accordingly, Defendants' motion under F.R.Civ.P 12(c) with respect to this issue should also be denied.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 12